UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JENNIFER STRANG,

    Plaintiff,                                                                     Civil Action No. 14-CV-14410

vs.                                                                     HON. BERNARD A. FRIEDMAN

FORD MOTOR COMPANY
GENERAL RETIREMENT PLAN and
FORD MOTOR COMPANY,

    Defendants.
_____/

**<u>OPINION AND ORDER
GRANTING DEFENDANTS' MOTION FOR JUDGMENT AND DENYING
PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD</u>**

        This matter is presently before the Court on cross motions for judgment on the administrative record [docket entries 33, 35]. Both parties have filed response briefs. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide these motions without a hearing.

*Background*

        Plaintiff Jennifer Strang brings this action as the personal representative of the estate of her deceased husband, John Strang, and individually as the named beneficiary of his pension from his former employer, Ford Motor Company. Plaintiff alleges that in April 2012 Ford notified her husband "that the Ford Plan would provide retiree participants with an option to take a lump sum distribution of their remaining retirement benefits beginning in August 2012." Am. Compl. ¶ 11. Plaintiff's husband wished to exercise this option, but his requests for additional information and for election forms, directed to Ford's National Employee Service Center ("NESC"), went unanswered. *Id.* ¶¶ 13-16. In October 2012, NESC told plaintiff's husband that no information about the lump sum option would be available until the end of the year. *Id.* ¶ 17. In November 2012

Ford sent plaintiff's husband a postcard "stating that he was now eligible for the lump sum option," in response to which he "promptly sent Ford a letter on November 16, 2012 declaring that he was electing the lump sum option." *Id.* ¶¶ 18-19. However, a representative of NESC told plaintiff and her husband by telephone "that he would have to wait until December 2012 to obtain forms for electing the lump sum option . . ." *Id.* ¶ 20. Plaintiff's husband died on November 18, 2012. *Id.* ¶ 23. In mid-February 2013 Ford informed plaintiff's counsel that plaintiff's husband was ineligible for the lump sum benefit because he died before December 14, 2012, when the election period for that benefit opened. *Id.* ¶ 27. In late February 2013 plaintiff "submitted a claim to NESC, . . . [requesting] that the lump sum option elected by John Strang should be honored by Ford." *Id.* ¶ 29. In August 2013 the NESC Employee Benefits Committee ("EBC") affirmed the denial of benefits "on the basis that John Strang had not made his election before death." *Id.* ¶ 43. As a result of this decision, plaintiff "was limited to receiving a lump sum buyout of her survivor's share of [her husband's] pension, which was $463,254.78 less than the amount that would have been received if [his] election of a lump sum buyout had been honored." *Id.* ¶ 45.

        The defendants in this matter are Ford Motor Company General Retirement Plan ("Ford Plan") and Ford Motor Company ("Ford"). The amended complaint asserts four claims. However, plaintiff has withdrawn Count I and the Court has dismissed Counts II and IV. Therefore, only Count III remains. In this count, which is brought against the Ford Plan under 29 U.S.C. § 1132(a)(1)(B),[1] plaintiff seeks the benefits to which she is entitled under the plan.

---

[1] Section 1132 states in relevant part: "(a) A civil action may be brought– (1) by a participant or beneficiary– . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;"

*The Administrative Record*

Documents included within the administrative record largely confirm plaintiff's factual allegations, which defendants do not deny. In a letter dated April 27, 2012, Ford provided eligible retirees, including John Strang, "with advance notice of a new opportunity to take the remaining value of your General Retirement Plan (GRP) pension benefit as a single lump sum payment. This advance notice allows you time to start considering whether a single lump sum payment is right for you." Pg ID 365.[2] This letter further stated:

> Due to the size of the eligible GRP population and the time needed to administer the offer and process payments, a series of election periods will be held throughout 2012 and 2013. You will be assigned a specific election period based on a random process using the last two digits of your Social Security Number. Under no circumstances will you be able to change your assigned election period. You will be notified approximately one month prior to the start of your election period and will have 90 days to make your decision.
>
> Prior to your election period, you will receive a postcard followed by:
> • A Decision Guide providing full details about the opportunity, and
> • A personalized Election Kit containing the value of your pension benefit, your specific payment options and instructions on how to make an election.
>
> To help you make an informed decision, Ford plans to provide you access to financial education through an independent financial services firm. Additional details will be provided in your Decision Guide.

*Id.* According to this letter, "[t]he announcement of this offering was included in Ford's most recent earnings release on April 27, 2012." Pg ID 366.

The details of the lump sum offer are found in Appendix L ("Lump Sum Windows")

---

[2] Citations to pages within the administrative record reference the "Pg ID" number in upper right-hand corner of each page.

3

of Ford's General Retirement Plan dated August 1, 2012. *See* Pg ID 1239-1242. The relevant provisions of Appendix L state:

### Section 1 – 2012/2013 Retiree Lump Sum Window

### A. Definitions

The following capitalized terms, when used in this Section 1 have the following meanings, notwithstanding any different definition of such terms elsewhere in the Plan.

> 1. "Lump Sum Window" means the 2012/2013 Retiree Lump Sum Window provided for under this Section 1 of Appendix L, which Window is available exclusively for the benefit of Lump Sum Window Retirees during the period August 1, 2012 through July 31, 2013.
>
> 2. "Lump Sum Window Election Period" means a consideration period of not less than 60 days and no more than 90 days assigned to a Lump Sum Window Eligible Member.
>
> 3. "Lump Sum Window Eligible Member" means a Member of the Plan who has a benefit commencement date on or before February 1, 2013 and who:
>
>> (a) is a Retired Member in one of the Participating Organizations (as defined below); and
>>
>> (b) is not excluded because the Member incurred a break in service on or after January 3, 2012 and has a benefit commencement date of July 1, 2012 or later; and
>>
>> (c) is not excluded because the Member is under age 65 and on Disability Retirement; and
>>
>> (d) is not excluded by the Company for administrative reasons; and
>>
>> (e) is selected to participate in the Lump Sum Window in accordance with Section 1C of this Appendix L.

4. "Lump Sum Window Qualified Retirement Date" means a date designated for the Member.

5. "Lump Sum Window Retiree" means a Lump Sum Window Eligible Member who has made an effective election under Section 1C of this Appendix L and in accordance with the terms and conditions of the Lump Sum Window as set forth in this Appendix L.

6. "Participating Organizations" means Ford Motor Company and subsidiaries identified as eligible for the Lump Sum Window.

### B. Temporary and Limited Application of this Section

1. Section 1 of this Appendix L is not intended to constitute a permanent part of the Plan, but is of temporary duration and limited applicability. The sole purpose of Section 1 of this Appendix L is to provide a window basis for the computation of benefits payable to Lump Sum Window Retirees and certain Spouses described in Section 1D of this Appendix L. This Appendix L shall not affect, or be taken into account in determining, any other benefits under the Plan of any participant other than a Lump Sum Window Retiree.

2. Section 1 of this Appendix L shall continue to apply in determining the right to benefits of each Lump Sum Window Retiree and the computation of such benefits.

3. The Lump Sum Window is voluntary and elective. No participant shall be required to elect benefits under the Lump Sum Window.

### C. Elections

1. Any Lump Sum Window Eligible Member shall be entitled to make an election under the Lump Sum Window effective as of their Lump Sum Window Qualified Retirement Date. Any Lump Sum Window Eligible Member who wishes to make an election under the Lump Sum Window must submit to the Company a completed and signed election form, in such manner as may be required by the Committee. If a completed and signed election form from a Lump Sum Window Eligible Member is received by the Company during

> such Member's Lump Sum Window Election Period, and such Member dies prior to the payment of any benefits, such election shall be effective.
>
> 2. An election under the Lump Sum Window shall not be effective unless a completed and signed election form is received by the Company before the expiration of the Lump Sum Window Election Period. An election under the Lump Sum Window may be revoked prior to the Member's Lump Sum Window Qualified Retirement Date by giving written notice to the Company in a form and in a manner acceptable to the Committee.
>
> 3. If a Lump Sum Window Eligible Member, upon the expiration of the Lump Sum Window Election Period, has not submitted to the Company a completed and signed election form under the Lump Sum Window, then the Lump Sum Window Eligible Member shall be deemed to have declined to make an election under the Lump Sum Window.
>
> 4. The Committee reserves the right to reject the application of any Lump Sum Window Eligible Member if, based on communications from the Internal Revenue Service, rejection of the application is necessary to preserve the qualification of the Plan under Code Section 401(a) or the tax-exempt status of the trust under Code Section 501. An election under this Section 1C by a Lump Sum Window Eligible Member shall be effective only if the Committee does not reject the Member's application under the Lump Sum Window. The Committee may reject such an application before the commencement of the Lump Sum Window Eligible Member's benefits.

Pg ID 1239-40.

Between October 31 and November 16, 2012, plaintiff telephoned the NESC four times, inquiring about the time frame for electing the lump sum option and requesting that the paperwork (i.e., claim forms) be mailed to her husband as soon as possible, as he was seriously ill and might not survive to the end of the year. *See* Pg Id 532. Plaintiff was told that "no exceptions are being made regarding the GRP Lump Sum program" and that her husband had to wait for the

postcard, which would be followed by a decision guide, which would be followed by an election kit. Pg ID 532, 559.

On November 14, 2012, Ford mailed John Strang the postcard informing him that his election period for the lump sum option was December 14, 2012, to March 13, 2013.[3] *See* Pg ID 368. This was followed on November 29 and 30, 2012, respectively, by the Decision Guide and Election Kit.[4] *See* Pg ID 373-88, 390-426.

In a letter to Ford dated November 16, 2012, and signed by plaintiff on her husband's behalf, John Strang stated that he was hospitalized and that his death may be imminent. *See* Pg ID 332. He expressed his desire to elect the lump sum option. *Id.*[5] This letter was received by NESC

---

[3] This postcard is undated, but defendants state they mailed it on November 14, 2012, *see* Pg ID 362, and plaintiff does not appear to dispute this date. In his November 16, 2012, letter to Ford, John Strang referred to the dates of his election period, which indicates he had received the postcard by then. *See* Pg ID 332.

[4] The Decision Guide (Pg ID 373-88) provided information to assist participants in deciding whether to elect the lump sum and, if so, whether to take the distribution in the form of direct payment, rollover, or a combination of the two. Information was also provided as to how the lump sum is calculated and factors to consider in weighing the relative advantages of the lump sum versus continued monthly benefits, including possible tax consequences. Additional information was provided in a DVD attached to the Decision Guide.

The Election Kit (Pg ID 390-426) contained various election forms. To elect the lump sum, John Strang would have checked the box next to "Option 1 – Lump Sum Payment Option" on "Form 1 – Benefit Election." Pg ID 397. Section 3 of this form required John Strang to verify his date of birth and marital status, his spouse's date of birth, and any applicable assignment (e.g., QDRO or IRS levy). *See* Pg ID 400-01. Section 5 of this form required an acknowledgment that John Strang had been provided by the plan administrator with various information (e.g., tax consequences and relative values of the options). *See* Pg ID 406-08. "Form 2 – Payment Direction" required John Strang to indicate how he wished to receive the lump sum, i.e., in cash, as a rollover, or a combination of the two. *See* Pg ID 410-11. "Form 3 – Waiver of Survivor Benefit," which had to be notarized, required Jennifer Strang to acknowledge and waive her rights to survivor benefits. *See* Pg ID 414-15.

[5] In 1996, John Strang executed a general durable power of attorney, appointing his wife Jennifer Strang as his agent and attorney-in-fact. *See* Pg ID 428-34. Defendants do not contend that Jennifer Strang lacked authority to act on John Strang's behalf.

on November 28, 2012. *See* Pg ID 341. John Strang died on November 18, 2012.

Plaintiff retained counsel to pursue the lump sum benefits based on John Strang's November 16, 2012, letter to Ford. In a letter dated February 14, 2013, Ford denied the claim for the following reasons:

> In order to make a GRP lump sum election, however, a GRP retiree must submit a complete and valid election form during their election period. Mr. Strang's election period did not open until December 14, 2012. Since he died before his election period opened, his eligibility for the lump sum opportunity ceased upon his death.

Pg ID 331. On June 28, 2013, the Employee Benefits Committee ("EBC") denied the claim on similar grounds, i.e., because John Strang "died prior to his assigned Lump Sum Window Election Period and, therefore, was not eligible to elect the GRP lump sum. In addition, there was no proper election form submitted." Pg ID 342.

On August 22, 2013, plaintiff's request for reconsideration was denied by the EBC for essentially the same reasons:

> Based on the provisions of the Plan, a member was not eligible to elect a lump sum payment until the member was selected to participate in the Lump Sum Window (Appendix L, Section 1(A)(3)) and the member's assigned Lump Sum Window Election Period commenced (Appendix L, Section 1(C)(1)).
>
> Because Mr. Strang died prior to commencement of his assigned Lump Sum Window Election Period, he never became eligible to elect a lump sum distribution, and thus had no vested interest in the lump sum opportunity. Further, the Plan requires a member who wishes to elect a lump sum distribution to submit a completed and signed election form during such member's assigned Lump Sum Window Election Period as required by the Committee (Appendix L, Section 1(C)(1)). Since Mr. Strang did not submit, and could not have submitted, such a completed form during his assigned Lump Sum Window Election Period because he died prior to such period, Mr. Strang was not eligible to, nor did he effectively, elect a lump sum distribution.

8

Pg ID 355.

*The Parties' Cross Motions for Judgment on the Administrative Record*

Plaintiff argues essentially that defendants' decision was arbitrary and capricious because John Strang elected the lump sum option during the one-year "Lump Sum Window" (August 1, 2012, to July 31, 2013) specified in paragraph A.1. of Appendix L. She argues that there is no provision in the plan requiring participants to make this election on any particular form or prohibiting them from making the election before their specifically assigned "Lump Sum Window Election Period" (in this case December 14, 2012, to March 13, 2013) or specifying how the 60-90 day election period would be determined. Nor, plaintiff argues further, is there any plan provision requiring that a participant be alive at the commencement of his/her election period or when Ford receives the election. Finally, plaintiff argues that defendants' decision was discriminatory because defendants were aware John Strang was seriously ill and nonetheless delayed assigning him an election period and providing him with election forms.

Defendants argue essentially that their decision was not arbitrary or capricious but followed the plain language of Appendix L. In particular, defendants argue Appendix L requires that each eligible retiree be assigned a 60-90 day election period within the larger one-year window and that an election of the lump sum option could be made only during that period and only on a prescribed election form. In short, defendants' argument is that "[b]ecause Mr. Strang did not submit a legally-acceptable election form during his lump-sum election window, the Committee properly denied Plaintiff's claim for lump-sum benefits . . ." Defs.' Br. at 3. To the extent the plan is ambiguous as to these requirements, defendants argue that the EBC exercised its discretion reasonably in interpreting the plan to require the submission of the official claim forms during the

9

election period.

*Standard of Review*

In a case such as this, where plaintiff challenges an ERISA plan administrator's decision denying benefits, the Court uses the "arbitrary and capricious" standard to review the decision if the administrator "is vested with discretion to interpret the plan . . . ." *DeLisle v. Sun Life Assur. Co. of Canada*, 558 F.3d 440, 444 (6th Cir. 2009) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). Under this standard, the Court must uphold the administrator's decision "if it is 'rational in light of the plan's provisions.'" *Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 456-57 (6th Cir. 2003) (quoting *Borda v. Hardy, Lewis, Pollard & Page, P.C.*, 138 F.3d 1062, 1066 (6th Cir.1998)). Further, the Court "may consider only the evidence available to the administrator at the time the final decision was made." *McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059, 1064 (6th Cir. 2014) (citing *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 618 (6th Cir.1998)).

In the present case, the arbitrary and capricious standard of review applies because the plan grants the plan administrator, the Retirement Committee, discretion to interpret the plan and award benefits. The applicable provision of the August 1, 2012, plan is found at Article XIII, Section 2, which states:

> The Committee shall have discretionary authority to administer the benefit structure of the Plan, and to this end may construe and interpret the Plan, and may correct any defect or supply any omission or reconcile any inconsistency in such manner and to such extent as it shall deem expedient to carry out the purpose of the Plan. It shall not, however, take any action not uniformly applicable to all employees similarly situated.

\* \* \*

> Benefits under this Plan will be paid only if the Committee decides in its discretion that the claimant is entitled to them. Any action of the Committee (within the scope of its functions) shall be final and conclusive upon any Member and upon every other person entitled to or claiming benefits or membership under the Plan, unless arbitrary and capricious. A member of the Committee who is also a member of the Plan shall not vote or act as a member of the Committee upon any matter relating solely to himself or herself.

Pg ID 1020. Subsequent versions of the plan contain the same provision. *See* Pg ID 1350 (December 31, 2012, plan); Pg ID 1684 (March 1, 2013, plan); Pg ID 2021 (June 1, 2013, plan). This significant degree of discretion delegated by the plan to the Retirement Committee requires the Court to review its decision in this matter under the arbitrary and capricious standard.

*Discussion*

Plaintiff presents a sympathetic case. Her husband died on November 18, 2012, just 26 days before the commencement of his election period. Had John Strang survived until December 14, 2012, and had he submitted a valid election form, he would have received a lump sum benefit of nearly $1.1 million. *See* Pg ID 390. But because he died before that date, plaintiff was entitled to a bit less than half of this amount, i.e., the lump sum of her survivor's share of his pension.[6] The significance of this financial loss, and the closeness of the timing, is not lost on the Court. Nonetheless, the Court must conclude that the EBC's decision is "rational in light of the plan's provisions."

As noted, the decision denying benefits in this matter rests on two reasons, one concerning the timing of the election and the other concerning the manner in which the election was

---

[6] As noted above, plaintiff alleges that she "was limited to receiving a lump sum buyout of her survivor's share of John Strang's pension, which was $463,254.78 less than the amount that would have been received if John Strang's election of a lump sum buyout had been honored." First Am. Compl. ¶ 45.

11

made. The first, concerning timing, is that "[b]ecause Mr. Strang died prior to commencement of his assigned Lump Sum Window Election Period, he never became eligible to elect a lump sum distribution." Plaintiff correctly notes that Appendix L does not specifically require that an eligible member make a lump sum election during his election period. Paragraph C.2. requires that the election be made before the election period expires. Similarly, paragraph C.3. states that a member will be deemed to have declined to make an election if he fails to submit an election form before expiration of the election period. And paragraph C.1. states that if a member submits an election form during his election period and dies before benefits are paid, the election will nonetheless be honored. There is no provision specifically requiring that a member make an election for the lump sum during the member's election period.

Nonetheless, the EBC's disallowance of John Strang's election on the grounds that it was not submitted during his election period is "rational in light of the plan's provisions" and a legitimate exercise of its discretion to construe and interpret the plan. Paragraph A.2. of Appendix L establishes a "'Lump Sum Window Election Period' [that] means a consideration period assigned to a [member] of not less than 60 days and no more than 90 days," and the EBC reasonably could interpret this to mean that a member had this period, and only this period, to consider whether to elect the lump sum option, as opposed to continuing to receive benefits monthly. By its nature, a "period" is a span of time with a beginning and an end. The beginning date of the period would serve no purpose if a member could elect the lump sum option prior thereto.

Further support for the EBC's interpretation is found in paragraph A.5., which requires a member to make "an effective election" and one that is "in accordance with the terms and conditions of the Lump Sum Window . . . ." The EBC reasonably could interpret these terms as

12

requiring a member to elect the lump sum option – if at all – only during the election period assigned to him. Similarly, paragraph B.1. states that the purpose of the section "is to provide a window basis for the computation of benefits payable to Lump Sum Window Retirees . . . ." The EBC could reasonably conclude that the purposes of the plan are best effectuated, and most efficiently administered, by enforcing the "window basis" of both the one-year Lump Sum Window and the 60-90 day election period.

The EBC's second reason for denying the claim in this matter is that John Strang's purported election, by letter dated November 16, 2012, was not made on the proper election form. Plaintiff correctly notes that the plan does not specifically require a member to use a particular form to elect the lump sum option. Nonetheless, the EBC's disallowance of the claim on this basis is "rational in light of the plan's provisions" and a legitimate exercise of its discretion to construe and interpret the plan. Paragraph C.1. of Appendix L requires any member wishing to make the election to "submit to the Company a completed and signed election form, in such manner as may be required by the Committee." Requiring all members to use the same form has the obvious benefits of ensuring that the claim process is administered efficiently and that all claims are handled uniformly. In addition, the EBC acted reasonably by requiring members to use only the company's form because it also ensures that all members acknowledge they have been provided with important information regarding such things as the tax consequences of taking the lump sum option and the relative value of the various options.[7] The company's form also ensures that each member verifies

---

[7] As to this issue, defendants note that a plan is prohibited by IRS regulations from distributing a plan participant's accrued benefits without first obtaining the participant's written consent, which is not valid unless the plan has provided certain information about the distribution being offered. *See* 26 C.F.R. § 1.411(a)-11(c)(2) (requiring consent from participants after providing them with "a general description of the material features of the

13

certain personal information, discloses any applicable assignments, submits his/her spouse's waiver to survivor benefits, and indicates the manner in which the lump sum should be paid. The EBC acted reasonably in carrying out Appendix L by requiring any lump sum election to be made on the company's form and, moreover, to provide members with election forms only after (or contemporaneously with) the lengthy Decision Guide and Election Kit. As noted, defendants mailed this information, along with claim forms, to John Strang at the end of November 2012. *See* Pg ID 373-88, 390-426.

In sum, the Court concludes that the EBC did not act arbitrarily or capriciously in denying John Strang's attempted election of the lump sum option. The EBC reasonably disallowed the attempted election on the grounds that it was submitted before the commencement of his election period and not on the required forms. Further, the Court rejects plaintiff's argument that defendants discriminated against John Strang by "determin[ing] that his election period was being delayed while he was terminally ill." Pl.'s Br. at 15. Defendants indicate, and plaintiff does not dispute, that each member's election period was assigned randomly based on Social Security numbers. There is no basis for the suggestion that defendants "delayed" in determining John Strang's election period. Indeed, since the "Lump Sum Window" ran from August 1, 2012, through July 31, 2013, John Strang's election period fell closer to the beginning than the end of this time frame. In any event, there is nothing in the administrative record to suggest that the selection of the dates of John

---

optional forms of benefit available under the plan" and informing them of "the right, if any, to defer receipt of the distribution"); 26 C.F.R. § 1.417(e)-1 ("Generally plans may not commence the distribution of any portion of a participant's accrued benefit in any form unless the applicable consent requirements are satisfied."). In the present case, the plan administrator acted reasonably in requiring members to use only the prescribed forms to elect the lump sum option, so as to ensure compliance with these regulations.

Strang's election period was anything other than random.

Further, plaintiff points to no plan provision or case law to support her argument that defendants should have provided John Strang with claim forms on demand.[8] Appendix L, paragraphs A.2. and B.1., specified 60-90 day election periods for all members to facilitate the orderly "computation of benefits payable to Lump Sum Window Retirees." Defendants' adherence to a system whereby election periods were randomly assigned based on Social Security numbers is neither unfair nor discriminatory, but ensures orderly and even-handed administration of the plan. If defendants were required to make an exception in any particular case, any member could demand that an exception be made in his/her case. There is nothing unreasonable, unfair, or discriminatory about assigning election periods randomly and declining to make exceptions.

*Conclusion*

For the reasons stated above, the Court concludes that defendants' decision in matter was not arbitrary or capricious. Accordingly,

IT IS ORDERED that plaintiff's motion for judgment on the administrative record is denied.

---

[8] Nor, as a practical matter, does it seem likely that John Strang would have received the Decision Guide and Election Kit before his death, even if defendants had mailed these documents immediately upon learning of his illness. While the complaint alleges that "in July 2012, John Strang contacted NESC and requested an expedited lump sum package due to health reasons," First Am. Compl. ¶ 15, the earliest such communication that appears in the administrative record is a telephone call from plaintiff to the NESC on November 13, 2012, at 2:07 p.m., to the effect that John Strang was "very ill and may not live to the end of the year." Pg. ID 532. He died five days later, early in the morning on November 18, 2012.

IT IS FURTHER ORDERED that defendants' motion for judgment on the administrative record is granted.

                                                  S/ Bernard A. Friedman_____
                                                  BERNARD A. FRIEDMAN
                                                  SENIOR UNITED STATES DISTRICT JUDGE

Dated: July 7, 2016
       Detroit, Michigan